UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**HUNTINGTON INGALLS INCORPORATED,**

Plaintiff,

v.  Civil No. 4:18cv147

**THE TRAVELERS INDEMNITY COMPANY,**

Defendant.

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss Count Three of Plaintiff's First Amended and Supplemental Complaint ("Amended Complaint"), filed by Defendant Travelers Indemnity Company ("Travelers") pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 34. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented, and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. R. 7(J). For the reasons stated below, Defendant's Motion to Dismiss Count Three of Plaintiff's Amended Complaint is **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Factual Background

Since the late 1800s, Plaintiff's Newport News Shipbuilding Division ("NNS"), under various names, has "operated as a company in Newport News, Virginia, specializing in the design, construction, overhaul and repair of ships for the U.S. Navy and commercial customers." Am. Compl. ¶ 2, ECF No. 33. In 1968, NNS became a wholly-owned subsidiary of Tenneco, Inc., before becoming a wholly owned subsidiary of Tenneco InterAmerica, Inc.—which itself was a wholly owned subsidiary of Tenneco, Inc.—in 1986. Id. ¶¶ 8-9. Through various subsequent changes in name and ownership, NNS came to its current name and status as a division of Huntington Ingalls Inc., which is itself a subsidiary of Huntington Ingalls Industries, Inc. Id. ¶¶ 10-16.

From 2001 to 2015, NNS was party to numerous "lawsuits and/or claims alleging asbestos exposure at or from the Newport News Shipyard or on ships or submarines built by NNS" (the "Asbestos Lawsuits"). Id. ¶ 18. As part of a search for historical liability insurance policies, many of which had been "lost from [NNS's] files," NNS came to understand that Travelers had provided liability insurance coverage for NNS during the 1970s and 1980s.

---

[1] The facts recited here come from the Amended Complaint and are assumed true only to decide the motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

Id. ¶¶ 22-25. NNS thus initiated discussions with Travelers regarding potential coverage for the Asbestos Lawsuits. Id. ¶ 26.

Travelers "confirmed the existence of primary insurance policies" from the 1970s and 1980s that were issued to Tenneco, Inc., the parent corporation of NNS during that time period, but did not disclose the existence of policies naming NNS as the insured. Id. ¶¶ 27-28. In various communications, Travelers represented to NNS that coverage was limited to the policies issued to NNS's parent and that there was no coverage under any Travelers policy for NNS prior to August 1, 1973. Id. ¶¶ 28-32.

In November of 2017, NNS located an insurance schedule that referenced a different Travelers policy number (No. T-EX-952171-71, the "1971-1973 Policy"). Id. ¶ 35. On November 14, 2017, after receiving a request from NNS, Travelers provided NNS with a copy of the 1971-1973 Policy, which identified "Newport News Shipbuilding and Dry Dock Company" as the "Named Insured." Id. ¶¶ 36-37. Following the filing of its complaint in the instant case, NNS identified an additional Travelers policy that denotes "Newport News Shipbuilding and Dry Dock Company" as the "Named Insured" (policy number T-EX-972408-73, the "1973-1974 Policy"). Id. ¶¶ 47-48. NNS claims that both the 1971-1973 Policy and the 1973-1974 Policy provide "extremely valuable" coverage relating to the Asbestos Lawsuits. Id. ¶¶ 39, 49.

NNS alleges that Travelers had knowledge and possession of the 1971-1973 Policy at the time of its prior discussions with NNS regarding coverage relating to the Asbestos Lawsuits and that Travelers "has not thoroughly reviewed its records for information relating to policies for NNS." Id. ¶¶ 42, 47. Furthermore, according to NNS, Travelers "owed a duty of good faith and fair dealing to NNS, and was in a superior position to know the existence and terms of the insurance policies that it had sold." Id. ¶ 34. NNS claims that it accepted and reasonably relied upon Travelers' representations regarding coverage, as NNS did not request payment under any policy that identified "Newport News Shipbuilding and Dry Dock Company" as the "Named Insured" prior to its discovery of the 1971-1973 Policy in November of 2017. Id.

### B. Procedural Background

On November 21, 2018, Plaintiff filed suit against Defendant in this Court (the "Complaint"). Compl., ECF No. 1. The Complaint included four counts: (1) Breach of Contract; (2) Failure to Act in Good Faith; (3) Constructive Fraud; and (4) Declaratory Judgment. Id. ¶¶ 48-70. On January 9, 2019, Defendant filed a Motion to Dismiss Counts Two and Three of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Mot. to Dismiss, ECF No. 18.

On June 17, 2019, Plaintiff filed the Amended Complaint, Am. Compl., ECF No. 33, which also included four counts: (1) Breach of Contract; (2) Failure to Act in Good Faith; (3) Constructive Fraud;

4

and (4) Declaratory Judgment. Id. ¶¶ 54-78. On June 28, 2019, Defendant filed the instant Motion to Dismiss Count Three of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), as well as a memorandum in support of its motion. Mot. to Dismiss, ECF No. 34; Def.'s Memo., ECF No. 35. On that same day, Defendant withdrew its prior Motion to Dismiss Counts Two and Three of the Complaint, ECF No. 18. Def.'s Withdrawal, ECF No. 37. On July 12, 2019, Plaintiff filed a Memorandum in Opposition to Defendant's June 28, 2019 Motion to Dismiss, Pl.'s Memo., ECF No. 38 (the "Memorandum in Opposition"), to which the Defendant responded on July 18, 2019. Def.'s Reply, ECF. No. 39.

## II. STANDARD OF REVIEW

The Rule 12(b)(6) standard of review permits dismissal when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Though a complaint need not be detailed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555; see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A motion to dismiss tests the sufficiency of a complaint without resolving factual disputes, and a district court "'must accept as true all of the factual allegations contained in the

complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011)). Although the truth of the facts alleged is presumed, district courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000); see Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must include 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" Johnson v. Am. Towers, LLC, 781 F.3d 693, 709 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678).

### III. DISCUSSION

#### A. Virginia Law - Constructive Fraud

The parties do not dispute that Virginia law governs the constructive fraud claim alleged in Count Three of the Amended Complaint, as the events and the harm alleged took place in Virginia. See Quillen v. Int'l Playtex, Inc., 789 F.2d 1041, 1044 (4th Cir. 1986) (citing McMillan v. McMillan, 219 Va. 1127 (1979)).

Under Virginia law, "the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." Mortarino v. Consultant Eng'g Servs., Inc., 251 Va. 289, 295 (1996). However, a further requirement to make out a constructive fraud claim is that the claim "must arise from a breach of a common law duty, as opposed to one that exists between the parties by virtue of a contract alone."[2] 1004 Palace Plaza, LLC v. Ebadom Food, LLC, No. 1:18cv1376, 2019 WL 3084236, at *2 (E.D. Va. July 15, 2019) (citing Dunn Constr. Co. v. Cloney, 278 Va. 260, 267 (2009)). Stated differently, Plaintiff must assert a claim that is not "based solely on a negligent breach of contract." Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 256 Va. 553, 559 (1998). The only question at issue in this case is whether Plaintiff has sufficiently pled a common law duty owed by Defendant to Plaintiff independent of any alleged contractual duty.[3]

---

[2] Under Virginia law, a breach of a statutory duty may also support a recovery in tort. See, e.g., Abi-Najm v. Concord Condo., LLC, 280 Va. 350, 362-64 (2010) (alleged violation of statutory duty supported claim for fraud in the inducement). However, as Plaintiff has not alleged any statutory duty owed by Defendant, the Court considers only the potential existence of a common law duty.

[3] Defendant has not challenged, and the Court does not consider, the sufficiency of Plaintiff's pleadings as to the specific elements of a constructive fraud claim under Virginia law.

7

The Supreme Court of Virginia has addressed the relationship between contractual disputes and constructive fraud on numerous occasions. The Court has expounded the rule that, "[t]o avoid turning every breach of contract into a tort," a tort claim requires that the duty "breached must be a common law duty, not one existing between the parties solely by virtue of the contract." MCR Fed., LLC v. JB&A, Inc., 294 Va. 446, 458 (2017) (internal quotation marks and citation omitted). The Court has also made clear, however, that a party can "show both a breach of contract and a tortious breach of duty." Richmond Metro. Auth., 256 Va. at 558. "In certain circumstances, a single act or occurrence can support causes of action for both breach of contract and for breach of a duty arising in tort." MCR Fed., 294 Va. at 457-58 (citing Dunn, 278 Va. at 266).

To determine whether a certain act or occurrence sounds in contract, tort, or both, a court must ascertain "the source of the duty violated." Richmond Metro. Auth., 256 Va. at 558; see also Kaltman v. All American Pest Control, Inc., 281 Va. 483, 490 (2011); Dunn, 278 Va. at 267. "If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort." Oleyar v. Kerr, 217 Va. 88, 90 (1976) (quoting

Burks Pleading and Practice § 234 at 406 (4th ed. 1952)); see also Fort Sill Apache Indus. v. Mott, No. 1:10cv1422 LMB/TRJ, 2013 WL 3967518, at *9 (E.D. Va. Aug. 1, 2013) ("Whether a duty is created specifically by contract or generally by contract is of no moment; if the contract creates the duty, then the action sounds in contract and cannot be brought in tort.") (citing Richmond Metro. Auth., 256 Va. at 558-59).

### B. Existence of a Common Law Duty

Under Virginia law, the relationship between an insurer and the insured does not inherently create an "extra-contractual duty." See Douros v. State Farm Fire & Cas. Co., 508 F. Supp. 2d 479, 485 (E.D. Va. 2007). This is not to say that an insurer cannot owe the insured a common law duty, merely that the insurance relationship alone does not create a common law duty. Cf. Kitchen v. Throckmorton, 223 Va. 164, 176 (1982) (as administratrix of an estate, defendant owed fiduciary duty that supported constructive fraud claim). Therefore, the inquiry turns to what, if any, common law duties arise from the facts alleged by Plaintiff.

In its Amended Complaint, Plaintiff alleged that Defendant breached its duty of good faith and fair dealing that was "[i]mplied in the NNS Policy." Am. Compl. ¶ 60, ECF No. 33. As discussed, such alleged contractual duty cannot support a constructive fraud claim. See Richmond Metro. Auth., 256 Va. at 559. Plaintiff also claimed in its Amended Complaint that

9

"Travelers had a duty to NNS to disclose the existence of the NNS Policies in response to NNS's requests for coverage for the Asbestos Lawsuits and to refrain from making misleading statements and omissions concerning the existence of the NNS Policies."[4] Am. Compl. ¶ 66, ECF No. 33. The face of the Amended Complaint does not clearly indicate the nature of this alleged duty (*i.e.*, whether it was a common law duty or an implied contractual duty stemming from the liability insurance policies).

In its Memorandum in Support of its Motion to Dismiss, Defendant argued that Plaintiff "[did] not allege any facts to support a non-contractual duty running from Travelers to NNS" and that "NNS allege[d] that Travelers' duties to NNS arise solely out of a series of liability insurance policies Travelers issued to NNS and its affiliates." Def.'s Memo. at 7, ECF No. 35. In its Memorandum in Opposition, Plaintiff argued that its constructive fraud claim was supported by a "common law duty not to misrepresent facts" and a "common law duty 'not to commit fraud.'" Pl.'s Memo. at 7, ECF No. 38.[5] However, Plaintiff's arguments appear to overlook the fact that the duty not to commit fraud as recognized

---

[4] The failure to disclose information can serve as the basis of a constructive fraud claim only if there is a duty to disclose and that duty "ar[ose] under common law, not the contract itself." White v. Potocska, 589 F. Supp. 2d 631, 644 (E.D. Va. 2008) (citing Foreign Mission Bd. of S. Baptist Convention v. Wade, 242 Va. 234, 241 (1991)).

[5] In reply, Defendant claimed that Virginia law does not recognize a separate, general "duty not to commit fraud" between two contracting parties, and again denied that any common law duty was owed by the Defendant to the Plaintiff. Def.'s Reply at 1-2, ECF. No. 39.

by Virginia law does not extend to all claims for <u>constructive, non-willful fraud</u>. See <u>Evanston Ins. Co. v. Sivam, Inc.</u>, No. 2:13CV135, 2013 WL 12096523, at *3 (E.D. Va. Aug. 19, 2013) ("Claims for actual fraud, as opposed to constructive fraud, are tort claims and are exempt from the economic loss rule. This is because an actual fraud claim relies on the duty to be truthful, which is a duty imposed by law, not by contract.") (internal citation omitted).

Under the law of Virginia, "[t]he duty not to defraud is owed by everyone to everyone, regardless of any special relationship between the alleged tortfeasor and victim. Thus, fraud is an independent, <u>wilful</u> tort." <u>Jordan v. Osmun</u>, No. 1:16cv501, 2016 WL 7173784, at *7 (E.D. Va. Dec. 8, 2016) (emphasis added) (quoting <u>Hewlette v. Hovis</u>, 318 F. Supp. 2d 332, 337 (E.D. Va. 2004)); <u>see also</u> <u>City of Richmond, Va. v. Madison Mgmt. Grp., Inc.</u>, 918 F.2d 438, 446-47 (4th Cir. 1990) ("Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract. . . . [Plaintiff] has alleged that [Defendant] violated a duty imposed by tort law, *i.e.*, <u>the duty not to commit fraud</u>.") (emphasis added); <u>Tidewater Beverage Servs., Inc. v. Coca Cola Co.</u>, 907 F. Supp. 943, 948 (E.D. Va. 1995). In the instant case, however, Plaintiff has not alleged actual, <u>willful</u> fraud on the part of the Defendant, but instead only constructive, non-willful fraud. "Constructive fraud differs from actual fraud in that the

11

misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (1994); see also Richmond Metro. Auth., 256 Va. at 559 ("The essence of constructive fraud is negligent misrepresentation.").

The existence of a general tort duty, owed by everyone to everyone, to refrain from constructive fraud has been implicitly repudiated by the Virginia Supreme Court, which has, on numerous occasions, rejected constructive fraud claims on the basis that a common law duty did not exist between two contracting parties. See, e.g., Richmond Metro. Auth., 256 Va. at 559 ("[Plaintiff's] allegations of constructive fraud are nothing more than allegations of negligent performance of contractual duties and are, therefore, not actionable in tort."). Furthermore, in MCR Fed., the Virginia Supreme Court held that the plaintiff "failed to demonstrate that [the defendant] breached a statutory or common law duty" when the plaintiff alleged only that the "the common law duty to tell the truth and not conceal material facts" supported its constructive fraud claim. 294 Va. at 459-60 (internal quotation omitted). If Plaintiff were correct that Virginia law recognized a general duty, owed by everyone to everyone, not to commit constructive fraud, then presumably no constructive fraud claims would fail to adequately allege a common law duty between

two parties, a result inconsistent with the holding in MCR Fed. and other decisions by the Supreme Court of Virginia. See Virginia Transformer Corp. v. P.D. George Co., 932 F. Supp. 156, 163 (W.D. Va. 1996) (finding that "the fraud exception to the economic loss rule is solely for actual fraud," as extending the exception to constructive fraud would, when "[c]arried to its logical conclusion . . . emasculate the economic loss rule" by allowing every breach of contract claim to be turned into a tort).

Moreover, even if there was a common law duty owed by Defendant to Plaintiff, under the well-established 12(b)(6) standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Put another way, simply stating that a duty existed is insufficient to support a claim for constructive fraud. Plaintiff cannot adequately plead a tort claim for constructive fraud by merely pointing to the general duty under Virginia law to not commit actual, willful fraud. Thus, Plaintiff's reliance on cases in which parties made out separate claims for actual fraud that met the Fed. R. Civ. P. 12(b)(6) standard is misplaced. Cf. Phillips v. Wells Fargo Bank, N.A., No. 3:17cv519-JAG, 2018 WL 1946925, at *2-4 (E.D. Va. Apr. 25, 2018) (allegations of actual fraud invoked duty to not commit fraud and were sufficient for both actual and

constructive fraud claims to survive a motion to dismiss)[6] and Bennett v. Bank of Am., N.A., No. 3:12cv34-HEH, 2012 WL 1354546, at *9 (E.D. Va. Apr. 18, 2012) (actual fraud claim allowed to proceed; there was no claim for constructive fraud). Furthermore, to the extent Plaintiff relied on Rountree Motors, Inc. v. Commonwealth Dealers Life Ins. Co., the Court notes that the material fact emphasized in Rountree was the dispute as to the existence of a contractual relationship between the parties—a dispute not reflected in the factual allegations of the instant matter—and that Rountree does not provide any support for the argument that the general duty not to commit actual fraud can support a standalone constructive fraud claim. No. 3:13cv47 DJN, 2013 WL 4102161, at *8 (E.D. Va. Aug. 13, 2013). Significantly, Plaintiff cited to no case in which a standalone constructive fraud claim is supported by the general duty not to commit actual fraud.

The Court also takes note of the policy considerations underlying Virginia's treatment of contract and tort claims. As the Supreme Court of Virginia has explained, "[t]he controlling policy consideration underlying tort law is the safety of persons and property—the protection of persons and property from losses

---

[6] Several of the other cases cited by Plaintiff in which courts have permitted a claim for constructive fraud to proceed similarly include claims for actual fraud, but are also distinguishable on alternative grounds. For example, in Harold v. TMC Enterprises, LLC, the key factual allegation emphasized by the court was that the defendant made false representations prior to the formation of the contract. No. 6:16cv25, 2016 WL 6069023, at *6 (W.D. Va. Oct. 17, 2016).

resulting from injury. The controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 425 (1988). "Thus, when a plaintiff alleges and proves nothing more than disappointed economic expectations assumed only by agreement, the law of contracts, not the law of torts, provides the remedy for such economic losses." Filak v. George, 267 Va. 612, 618 (2004).

The present case concerns alleged economic loss and the protection of bargained-for expectations rather than the safety of persons and property, with which the common law of torts is primarily concerned. In the section of the Amended Complaint detailing its <u>constructive fraud</u> claim, Plaintiff stated that the alleged actions of Defendant "deprived NNS of the benefit of the insurance provided by the NNS Policies."[7] Am. Compl. ¶ 71, ECF No. 33. Plaintiff also wrote in that section that NNS "has been damaged and is entitled to judgment <u>for breach of contract</u> in an amount to be proven at trial." Id. ¶ 72 (emphasis added). It is clear from Plaintiff's own statements that this case concerns the protection of bargained for expectations, thus revealing that the contract forms the basis for Plaintiff's alleged damages. See VA Timberline, LLC v. Land Mgmt. Grp., Inc., 471 F. Supp. 2d 630, 633

---

[7] Plaintiff used this exact same language in the section of the Amended Complaint concerning its Breach of Contract claim. Am. Compl. ¶ 57, ECF No. 33.

15

(E.D. Va. 2006) ("The present case does not involve the safety of persons and property from injury; however, the present case does involve economic loss and the protection of bargained-for expectations . . . . [t]he contract between the parties thus forms the sole basis for Plaintiff's alleged damages.").

Based on the current record, this Court finds that Plaintiff has not alleged a duty that can serve as the foundation for a constructive fraud claim, though the Court recognizes that Plaintiff may consider seeking leave to further amend its complaint to state a claim for actual fraud, if it can do so in good faith.

### C. Pleading in the Alternative

In its Memorandum in Opposition, Plaintiff argued that, even if there is an "overlap" between the duties alleged for the purpose of making out a constructive fraud claim and the contractual claims, NNS should be permitted to plead the constructive fraud claim in the alternative. Pl.'s Memo. at 10, ECF No. 38. Plaintiff is correct in stating that it is permitted to plead alternative theories of liability. However, that does not extinguish or reduce Plaintiff's pleading obligations, nor does a lack of a contractual duty create a common law or statutory duty upon which Plaintiff can base a constructive fraud claim. Just as the existence of a contract does not eviscerate an existing duty owed, the absence of a contract does not generate a duty. For the reasons outlined in the sections above, Plaintiff has not alleged a duty that can serve

16

as the foundation for a constructive fraud claim. Moreover, Plaintiff's reference implying some relevance to the forthcoming resolution of its other claims does not impact the Court's determination as to the sufficiency of Plaintiff's pleading of its constructive fraud claim. Stated differently, Defendant's arguments concerning the scope of the contracts at issue in no way remedy Plaintiff's failure to allege a duty that can serve as the foundation for a constructive fraud claim.

## IV. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** Defendant's Motion to Dismiss Count Three of Plaintiff's Amended Complaint.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ 
Mark S. Davis
CHIEF UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 28, 2019